Zurow et al., Appellees, *v.* City of Cleveland et al., Appellants. ▮

[Cite as Zurow v. Cleveland (1978), 61 Ohio App. 2d 14.]

(No. 36856—Decided September 7, 1978.)

*Mr. Donald P. Mull,* for appellees.
*Mr. Jerome Silver,* for appellants.

KRENZLER, J. John and Helen Krusinski own property at the southeast corner of East 63rd and Heisley Avenue in the city of Cleveland. The parcel is 40 feet by 140 feet and is located in a district zoned for a two-family residence.

The lot is presently occupied by two buildings. On the front portion is a two-story building with a store on the first floor and suites on the second floor. On the rear portion of the property is a one-story masonry garage used to manufacture food and sausages. The owners propose to add ten feet to the width of the rear building at the first floor level and construct a second floor over the entire building area of 60 x 22 feet, or 1320 square feet.

The owners' request for a building permit was rejected by the Building Commissioner of the city of Cleveland on the basis that the proposed structure would be in violation of several zoning ordinance restrictions including residence limitations, sideyard, setback, rearyard setback, total floor area and off street parking requirements.

The Krusinskis appealed the denial of the building permit to the Board of Zoning Appeals, hereinafter referred to as the Board. The proceedings before the Board were conducted in an informal manner with the chairman of the Board calling for reports from the secretary of the Board, and from representatives of the building department and the housing department of the city of Cleveland. None of the persons appearing at the hearing were sworn under oath prior to testifying nor did an examination or cross-examination occur.

A summary of the statements made before the Board is as follows. Mr. Krusinski testified that he has operated his meat-processing plant for approximately twenty years. He stated that between fourteen and sixteen individuals are employed at the plant, most of whom live within walking distance of the building and, therefore, have no need to park cars in the vicinity of the building. Mr. Krusinski anticipates hiring two more employees in order to comply with inspection requirements. He stated that he has requested a permit to expand the building for remodeling purposes so that the employees will be able to work with greater ease and facility. He stated that he may be forced out of business in the event

the permit is not granted. With the addition to the building two machines used in meat-processing currently located outside of the building would be placed within the confines of the building. Mr. Krusinski anticipates a reduction in the frequency of deliveries as additional storage space would be available. Because the building would be wholly enclosed he anticipates a reduction in noise from the use of the machines.

In support of the Krusinskis' application, Mrs. Mack testified that she resides next door to the property in question and prefers to see the Krusinskis expand and continue to make use of the building rather than have a vacant building on the corner.

Mr. Kane, whose property is located eighty feet from the building, described the Krusinskis' business as an asset to the community. He stated that the area is already experiencing a growth in similar businesses. However, he also cited examples of other businesses that have abandoned the area and moved to other locations leaving behind vacant structures.

The testimony in opposition to the application included that of Mr. Pospie, a resident of the area, who described an ongoing problem of air and noise pollution and stated that refrigerator trucks have been parked on both sides of the facility and that large semi-trucks constantly travel down the street.

Mr. Mann, owner of the adjoining property, stated that the Krusinskis' facility has been growing and that intolerable odors and constant noise are emitted from the building.

Mr. Zurow, a neighboring property owner, testified that the delivery trucks which arrive every Tuesday block the sidewalks and that the odors emitted from the facility compel him to close all windows in his home, causing great discomfort in the summertime.

Several petitions were submitted to the Board. One petition containing fourteen names was signed by employees of Krusinski Meats who stated that they reside in the immediate area and urge the granting of the variance because their employment is greatly dependent on the continuation and operation of the establishment.

Also, twenty-seven residents of the area signed a petition supporting the Krusinskis' request to expand and upgrade the buildings as such action would be an asset to the community and add stability.

At the conclusion of the hearing the Board passed a resolution on November 24, 1978, in which it reversed the decision of the Building Commissioner and granted the permit requested by Krusinskis. In relevant part, the resolution provides as follows:

"Whereas, after due consideration of the testimony submit requested by the Krusinskis. In relevant part, the resolution provides as follows:

"1. The evidence presented establishes that the property in question has been located in a Two-Family District from 1929 to the present; that the front building was erected prior to 1929, at which time it became a legal nonconforming use, to wit: a retail butcher shop; that a permit was issued, in 1955, to construct a private garage; that a similar request as in the present appeal was refused in 1967; that the private garage erected in 1955, since, has been converted and now is used to process foods, which are then sold to retail outlets; that the front store building has been similarly converted, also; that the proposed addition would permit the applicant to remove outside storage, which has been a source of neighborhood complaint; and that the addition, also, would bring the processing operation into compliance with Federal regulations governing same.

"2. Local conditions and the evidence presented justify the Board in making the variance requested.

"3. The granting of the permit will not be harmful to neighboring properties or to their occupants.

"4. The refusal of this permit would work an unreasonable hardship upon the owner with no corresponding gain to the community.

"Now therefore,

"Be it resolved that the decision of the Commissioner of Buildings heretofore rendered in the within be and the same is hereby reversed and the permit appealed for is granted."

Nine persons filed an appeal in the Common Pleas Court of Cuyahoga County pursuant to R. C. Chapter 2506 from the granting of the variance. The appellants were: Martin Zurow, Roman Lesniak, Leonard and Irene Pospie, Frank and Helen Bednarz, Louis Drozd, Florence Drozd and Frank Mann.

They alleged that they are resident electors or property

owners and as such are appealing from the decision of the Board rendered on November 24, 1975. A request was made pursuant to R. C. 2506.02 that the secretary of the Board file the transcript with the Common Pleas Court.

In addition, the appellants filed an action seeking to permanently enjoin the Building Commissioner from issuing a building permit for the additional structure. The following allegations were made in the complaint: defendants Helen and John Krusinskis' property is in violation of the residence limitations of the Building and Zoning Code of the city of Cleveland; that the building has been expanded in violation of the ordinance and the building code of the city of Cleveland; that failure to grant the injunction will result in great damage to appellants in an increase in traffic and noise; and that parking of additional trucks on a residential street will greatly diminish the value of the residential property.

The trial court decided the case on the basis of the transcript of proceedings submitted by the Board. No additional testimony was taken. The trial court found that the Board exceeded its authority in granting the application requested by the Krusinskis and that the decision of the Board was contrary to evidence submitted and was an abuse of its discretion. The court further found that the decision of the Board is detrimental to the health and welfare of the community and not in harmony with the general purpose and intent of the zoning code. The court also found that the decision of the Board is contrary to the rules and regulations of the Codified Ordinances of the city of Cleveland. Consequently, the court reversed the decision of the Board and ordered the Building Commissioner not to issue to John and Helen Krusinski the requested building permit.

From this decision the Krusinskis have taken the present appeal and have one assignment of error as follows:

"The reversal of the decision of the Board of Zoning Appeals to grant a variance and order the Building Commissioner to issue a building permit to defendant-appellants, John and Helen Krusinski, was contrary to law in that the Board's decision was supported by reliable and probative evidence; was not an abuse of its discretion; and therefore, should have been sustained."

In this case we are concerned with the authority of the

Board of Zoning Appeals of the city of Cleveland to grant a variance. The Charter of the city of Cleveland creates the Board of Zoning Appeals and grants to it the authority to hear and decide appeals made for exceptions to and variations in the application of ordinances governing zoning in the city of Cleveland in conformity with the purpose and intent thereof and to hear and decide all appeals made for exceptions to and variations in the application of ordinances or orders or regulations of administrative officials or agencies except those that are within the jurisdiction of the Board of Building Standards and Building Appeals. Cleveland Charter, Section 76-6 (b).

Pursuant to the foregoing charter provision, the city of Cleveland adopted Chapter 329 [2] of the Codified Ordinances of the city of Cleveland entitled Board of Zoning Appeals which provides in part that no action of the Board shall be taken in any case until proper notice has been given and a public hearing has been held. Section 329.01 (h).

The Board has the power to grant variances where there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of the zoning code. Under these circumstances, it may vary or modify the application of any such provisions in harmony with the general purpose and intent of the zoning code so that public health, safety, morals, and general welfare may be safeguarded and substantial justice done. Section 329.03 (a).

The Board's power to grant variances is limited to specific cases where the following three circumstances exist:

(a) The practical difficulty or unnecessary hardship inheres in and is peculiar to the premises sought to be built upon or used because of physical size, shape or other characteristics of the premises or adjoining premises which differentiate it from other premises in the same district;

(b) Refusal of the variance appealed for will deprive the owner of substantial rights; and

(c) Granting of the variance appealed for will not be contrary to the purpose and intent of the provisions of the zoning code. Section 329.03 (b) (1)-(3). *See State, ex rel. Shaker*

---

[2] Formerly Chapter 11, Section 5.1166-.1167, Zoning Code, recodified as Chapter 329 of the Codified Ordinances of the city of Cleveland, 1976.

*Square Co. & The Stouffer Corp.,* v. *Guion* (1957), 76 Ohio Law Abs. 524.

The appellant has the burden to state and substantiate his claim that the three conditions listed in Section 329.03 (b) (1)-(3) exist. Further, the Board is required to make a finding on each of these three conditions as they apply in each specific case as a prerequisite to the granting of a variance. Section 329.03 (c).

The variance powers of the Board of Zoning Appeals include the power to grant variances from use regulations; area, yard and court regulations; height regulations; and distance regulations. Section 329.03 (d)-(e). There are certain limitations on the Board's power to grant variances which are not applicable to this appeal. Section 329.04.

Any decision or determination of the Building Commissioner or the Commissioner of Housing relating to the provisions of the Zoning Code of the city of Cleveland may be appealed to the Board of Zoning Appeals by any person deeming himself aggrieved or adversely affected by such decision or determination. Section 329.01 (e).

We have carefully reviewed the transcript of proceedings submitted by the Board of Zoning Appeals and the trial court's order reversing the granting of the variance to the Krusinskis. It is our conclusion that the assignment of error is not well taken and that the trial court properly reversed the decision of the Board of Zoning Appeals. The record clearly demonstrates that the Krusinskis did not present sufficient evidence to substantiate their claim that the three conditions listed under section 329.03(b)(1)-(3) exist. Therefore, the trial court's finding that the Board of Zoning Appeals exceeded its authority in granting the application that the Board's order was contrary to the evidence submitted is proper and the assignment of error is not well taken.

There is another issue apparent on the record before this court which demonstrates error. It is concerned with the failure to administer an oath to witnesses at an administrative hearing.

While there are no express statutory requirements concerning the procedures to be followed at administrative hearings before agencies of political subdivisions, the administrative agency must be cognizant of the fact that

adverse consequences may result where it infringes on a party's right to a fair hearing. An administrative agency such as a board of zoning appeals hearing an appeal from the denial of a building permit by a building commissioner acts as a quasi-judicial body. *Libis* v. *Bd. of Zoning Appeals* (1972), 33 Ohio App. 2d 94; *In re Sergent* (1976), 49 Ohio Misc. 36. Where certain procedural formalities are not observed its decision may be reversed by a reviewing court or the material submitted at the hearing may be disregarded and additional testimony taken by the Common Pleas Court in an appeal under R. C. Chapter 2506. Thus, the time and energy consumed at a hearing before the administrative agency would be wasted.

When an appeal is taken under R. C. Chapter 2506 from a decision of an administrative agency, the appellant must file a praecipe with the administrative agency and the administrative agency must file a complete transcript of all the original papers, testimony and evidence offered, heard and taken into consideration in issuing the order appealed from. R. C. 2506.02. The hearing of such appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed pursuant to R. C. 2506.02 unless it appears on the face of the transcript or by an affidavit filed by the appellant that there are certain infirmities or deficiencies in the record. *Dvorak* v. *Municipal Civil Service Commission* (1976), 46 Ohio St. 2d 99; *Schoell* v. *Sheboy* (1973), 34 Ohio App. 2d 168; R. C. 2506.03.

Unless and until the trial court has a complete transcript before it the court may not decide the case on the merits. R. C. 2506.02; R. C. 2506.03 (A); R. C. 2506.04; *see Cincinnati* v. *Glendale* (1975), 42 Ohio St. 2d 368, 370; *Sofer* v. *Housing Authority* (1973), 44 Ohio App. 2d 113; *Beerman* v. *Kettering* (1965), 14 Ohio Misc. 149.

The deficiencies referred to above are outlined in R. C. 2506.03, and are of two general types. The first concerns infringement or denial to the applicant for administrative relief of certain procedural rights during the administrative proceedings. R. C. 2506.03 (B), (C), (D). The other type of deficiency concerns the state of the record. R. C. 2506.03 (A), (E).

Infringements or denials of certain procedural rights to

an applicant for administrative relief occur where the appellant at the administrative hearing was not permitted to appear and be heard in person or by his attorney to present his position, arguments, and contentions; to offer and examine witnesses and present evidence; to cross-examine witnesses; to offer evidence to refute opposing evidence and testimony; and to proffer any such evidence into the record. R. C. 2506.03 (B) (1)-(5). Additional infirmities exist where testimony was not given under oath or where the appellant was unable to present evidence by reason of the lack of the power of subpoena. R. C. 2506.03 (C); R. C. 2506.03 (D).

Those infirmities dealing with the state of the record occur where the transcript does not contain a report of all of the evidence admitted or proffered by the appellant, or the officer or administrative body failed to file with the transcript conclusions of fact supporting the order, adjudication, or decision appealed from. R. C. 2506.03 (A), (E).

Under any of the circumstances outlined in R. C. 2506.03, upon motion by a party, additional testimony shall be taken and the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. R. C. 2506.03; *Dvorak* v. *Municipal Civil Service Commission, supra; Schoell* v. *Sheboy, supra; Grant* v. *Washington Twp.* (1963), 1 Ohio App. 2d 84; *Fleischmann* v. *Medina Supply Co.* (1960), 111 Ohio App. 449.

Where the deficiencies outlined in R. C. 2506.03 are not apparent on the face of the transcript or the party does not assert by affidavit that they occurred or were raised at the administrative level, such party is precluded from seeking to introduce additional evidence before the Common Pleas Court. Where these omissions are waived the court should decide the case on the merits on the basis of the transcript of evidence as submitted by the administrative agency without taking additional evidence.

In the present case the Board of Zoning Appeals conducted a very informal proceeding. Witnesses were not sworn, nor was there examination or cross-examination of witnesses.

Where a party demands that witnesses be sworn, or objects to unsworn testimony, and the administrative agency proceeds to hear unsworn testimony, such testimony is not

evidence upon which a decision may be made. *Arcaro Bros. Builders, Inc.* v. *Zoning Board of Appeals* (1966), 7 Ohio St. 2d 32. In *Arcaro Bros. Builders, Inc.* v. *Zoning Board of Appeals, supra,* the chairman of the Zoning Board of Appeals refused permission to have any of the witnesses sworn and allowed unidentified statements, apparently from the persons attending the hearing, to be recorded in the transcript. The Supreme Court stated that R. C. 2317.30 requires that before testifying a witness shall be sworn to testify to the truth. In *Arcaro Bros., supra,* the judgment of the Court of Appeals was reversed and the cause remanded to the Zoning Board of Appeals for a hearing.

Therefore, where the entire record of the agency's proceedings consists of only unsworn testimony to the admission of which there was an objection, the agency's decision must be reversed and remanded as such decision would be totally unsupported by any evidence. A record containing only unsworn testimony contains no evidence. *Arcaro Bros. Builders, Inc.* v. *Zoning Board of Appeals, supra.* Any decision of an administrative agency based on such a record may not be affirmed since the decision would not be based on reliable, probative, and substantial evidence. R. C. 2506.04; *Capello* v. *Mayfield Heights* (1971), 27 Ohio St. 2d 1; *Doelker* v. *Accountancy Board* (1966), 12 Ohio St. 2d 76; *Arcaro Bros. Builders, Inc.* v. *Zoning Board of Appeals, supra.*

While *Arcaro Bros. Builders, Inc.* v. *Zoning Board of Appeals, supra,* held that it is error for unsworn testimony to be admitted into evidence, it did not answer the question of whether such error is waived by failure to timely object. *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41, held that such error is waived by failure to bring to the attention of the administrative agency an objection to the admission of unsworn testimony. By such failure to object the error is waived throughout the entire proceedings, including the appellate level.

In instances where the transcript of evidence from the administrative hearing contains both sworn and unsworn testimony, and there was an objection to the unsworn testimony at the administrative hearing followed by an application to take additional testimony under R. C. 2506.03 the trial court shall take additional testimony. R. C. 2506.03 (C).

Under these circumstances the trial court shall not consider the unsworn testimony but shall consider only the sworn testimony. R. C. 2506.03 (E) provides that in cases where additional testimony is taken under R. C. 2506.03 the court shall hear the appeal upon the transcript and such additional evidence. This means that in deciding the case the trial court shall disregard the invalid testimony in the transcript and consider only the valid testimony contained therein, plus the additional testimony taken by the court.

In the event that there is no objection to the admission of unsworn testimony at an administrative hearing, the error of allowing this evidence is waived and no additional evidence should be taken by the trial court in an appeal pursuant to R. C. Chapter 2506. *Stores Realty Co.* v. *Cleveland, supra.* The trial court should then consider the unsworn testimony as though it were given under oath.

In the instant case it was error for the Board of Zoning Appeals not to swear witnesses and not to permit examination and cross-examination of witnesses. However, inasmuch as the Krusinskis did not object to the Board's failure to swear witnesses or raise the issue of examination or cross-examination during the proceedings before the Board, they waived their right to claim these errors in an appeal to the Common Pleas Court under R. C. Chapter 2506 and subsequently to this court. *Stores Realty Co.* v. *Cleveland, supra.*

*Judgment affirmed.*

PARRINO and KRUPANSKY, JJ., concur.